McINTOSH et al. v. McKANY & CARMICHAEL MERCANTILE CO.

(Circuit Court of Appeals, Ninth Circuit.    May 9, 1910.)

No. 1,795.

SALES (§ 355*)—ACTION FOR PRICE—EVIDENCE OF SALE AND DELIVERY OF
GOODS.

An allegation in a complaint that plaintiff sold and delivered goods to
defendants at their special instance and request is supported by evidence
that defendants were the general contractors for building a line of rail-
road, and that on defendants' request, and on their promise to pay for
the same, plaintiff furnished supplies to camps on the line of work on or-
ders given by a firm of subcontractors, and charged the same to such
firm, as directed by defendants.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1030, 1041; Dec.
Dig. § 355.*]

In Error to the Circuit Court of the United States for the District of
Montana.

Action by the McKany & Carmichael Mercantile Company against
James A. McIntosh and others. Judgment for plaintiff, and defend-
ants bring error. Affirmed.

George F. Shelton, Charles A. Ruggles, and H. H. Field, for plain-
tiffs in error.

Ike E. O. Pace and McBride & McBride, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. We do not agree with counsel for the plain-
tiffs in error in their contention that there is only a scintilla of evidence
to support the allegations of the defendant in error's complaint that
they sold and delivered the goods in question to the plaintiffs in error
at their special instance and request. On the contrary, there was sub-
stantial testimony introduced before the court and jury to sustain that
contention, which satisfied both the court and jury. A part of that
evidence is the testimony of the president of the plaintiff company,
who testified, among other things, substantially as follows:

That in January, 1907, he took the train at Whitehall to go to Butte,
Mont., to see McIntosh, and was introduced to him on the train by Jen-
nings, who was McIntosh Bros.' superintendent of construction on the
Milwaukee road; that during the conversation the witness told Mc-
Intosh that Perine and Robinson, who were subcontractors under Or-
man & Crook, were owing him a lot of money, which they had failed to
pay; that McIntosh replied to the witness that any supplies that he
furnished to Perine and Robinson he furnished at his own risk, and
that he should have an order from Orman & Crook, who were subcon-
tractors under McIntosh Bros. on the Milwaukee road; that the plain-
tiff company did not then have an account with Orman & Crook, and
that the witness told McIntosh that he would just as soon have Perine
and Robinson owing him as Orman & Crook, as he had examined into
their financial condition and found that it was poor; that McIntosh
then told the witness that Orman & Crook had filed a bond to protect

them against any liens or accounts against their contracts on the Milwaukee road, and that the witness should have an order from Orman & Crook to furnish supplies to any of the subcontractors; that, if the witness got an order from Orman & Crook to furnish supplies to Perine and Robinson, he would be responsible for it, and would pay the accounts, as McIntosh Bros. were the general contractors and the accounts came through their office; that the next day in Butte, at the Thornton Hotel, the witness told McIntosh that he had found that the bond that was furnished by Orman & Crook did not cover supplies furnished to the different camps along the line, and that McIntosh told the witness that that made no difference, and for him to go home and do as he had been told, which he did; that McIntosh told the witness to furnish Orman & Crook any supplies which they needed at their camps, or to any of their subcontractors, and that he would be responsible to them for their accounts, as it was his contract, and he was anxious to have the contract go on, and it was necessary to have these supplies to carry on the work; that at that time the plaintiff company had no account with Orman & Crook; that McIntosh told the witness to carry the account in the name of Orman & Crook, and to furnish any supplies that they needed for the construction of the work over there; that the witness then went home, and that the next morning Perine and Robinson had three four-horse teams there to get supplies, and the plaintiff's clerks were putting up the orders, but that the witness stopped them, and told the men in charge of the teams that he could not furnish any more supplies unless an order from Orman & Crook was obtained, whereupon they phoned to Orman & Crook's office, explaining the situation to them, and the latter called up the witness, and told him to go ahead and supply the goods, which the plaintiff did; that subsequently the witness saw McIntosh about once a month, and told him the amounts that were due the plaintiff, and conversed with him in a general way about the accounts up to April, 1907, about which time Orman & Crook had taken away from Perine and Robinson their contract; that in April, 1907, the witness and one George Franks came to Butte to see McIntosh, and met him at the Thornton Hotel, telling him that the accounts had not been paid, and that they needed the money—that is to say, the amount for the goods that plaintiff had delivered on the order of McIntosh; that McIntosh then told the witness and Franks to go ahead and furnish the camps with the supplies that were necessary to carry on the work; that he had taken part of the work away from Orman & Crook, and was likely to take more of it, as they were not doing the work satisfactory to him, but, whether he did or not, in any event they needed supplies, and for him to go home and rest easy, and he would be responsible for any supplies, and pay the plaintiff for any supplies furnished under the contract, and that the witness then went home and furnished all the supplies that were ordered from the plaintiff for those camps; that in December, 1907, the witness went to see McIntosh, and found him at the Thornton Hotel, in Butte, and told him that he had come to see about getting the money on the account, as he understood that Orman & Crook had failed; that McIntosh said that he would pay every dollar of the plaintiff's account when the proper time came, but that he was busy then, and

could not attend to it at that time, and that there were two of the camps still running out there, and that he might as well furnish what little stuff they wanted until the United States Fidelity & Guaranty man would come, or McIntosh Bros. would take charge of the work and complete the contract; that the witness went back and kept on furnishing the supplies in the same way; that in January following the witness and Franks went to see McIntosh at the Thornton Hotel about their respective accounts, when McIntosh told them that they were arranging to pay off the time checks, that he was busy with that, that when he paid those off he would take up the matter of paying the plaintiff's and Franks' accounts, and that the plaintiff's account would be one of the first that would be paid, and that McIntosh would leave Butte with clean skirts and pay every dollar that they owed.

Jennings, McIntosh Bros.' superintendent, testified, among other things, that he introduced McKany and McIntosh on the train to Butte, and sat in the seat immediately in front of them, when this conversation occurred, as near as he could remember:

"Mr. McKany said, 'Mr. McIntosh, I have been furnishing Perine and Robinson a lot of goods on the Milwaukee grade,' and Mr. McIntosh says, 'Who is Perine and Robinson? And Mr. McKany said, "They are subcontractors under Orman & Crook,' and he said, 'Don't know them at all.' He said, 'Any goods that you sell those people, or any of Orman & Crook's subs, we will not be responsible for, and you will have to take your own chances, unless you have an order from Orman & Crook.' I think I remember that Mr. McKany said he would just as lief have Perine and Robinson as Orman & Crook, and Mr. McIntosh said it didn't make any difference, that Orman & Crook were the head contractors, and they had furnished them the necessary bonds, and without their orders they would not be responsible for anything, and then he said, 'Orman & Crook's account will be good.' Mr. McKany said, 'How will I carry those accounts?' And Mr. McIntosh says, 'Carry them in the name of Orman & Crook, and we will pay the bill.'"

Franks, a witness called on behalf of the plaintiff company, testified, among other things, that he was engaged in the butchering business, and was present at the Thornton Hotel in Butte about April, 1907, and heard the conversation between McIntosh and McKany; that the way he happened to be present was that he had been furnishing Orman & Crook with meat, and they had stopped paying him, and he came in to see McIntosh about the matter; that in that conversation McIntosh told McKany to go home and furnish merchandise, and for him (Franks) to furnish meat, and that he would pay the bill; that he was under a heavy bond to complete the work, and he did not want those camps broken up; that men were hard to get, and to go ahead and furnish the merchandise and the meat, and he would pay the bill; that he said that to McKany and himself, and he further said that the account should be carried in Orman & Crook's name; that he had already taken part of the work from Orman & Crook, and that he would have to have meat and provisions on his own work, and they would have to have the same if they continued theirs, and to go ahead and furnish them, and he would pay the bills; that he (Franks) was present with McKany and McIntosh at the same place, about January, 1908, when McKany and himself had gone to try and get their money for the provisions that the plaintiff company had furnished and for meat that he had furnished, at which conversation McIntosh said that he was very busy with the time

checks, and that it would take him ten days or two weeks to get that matter straightened out, and that he would pay the plaintiff's and his own bills at that time, and that he expected to pay every cent that was standing against McIntosh, and that he would go out of there with clean skirts.

This testimony certainly tended strongly to support the plaintiff's contention that they sold the goods to McIntosh Bros. at their special instance and request. If, as the plaintiff's testimony tended to show, and as the jury must have found, McIntosh Bros. authorized the plaintiff company to carry the account in the name of Orman & Crook, and to deliver the goods to them or on their order, it was none the less a sale and delivery to McIntosh Bros. The question of such a sale and delivery was the real issue in the case. It was submitted to the jury upon somewhat conflicting evidence, it is true, but in the light of instructions which were full, correct and clear, and we see no good reason to interfere with the result.

The judgment is affirmed.